**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JACOB WHEELER,<br><br>                Plaintiff,<br><br>   v.<br><br>SIERRA ONCOLOGY, INC., ROBERT PELZER, GAURAV AGGARWAL, ANDREW ALLEN, MONA ASHIYA, CRAIG COLLARD, JEFFREY H. COOPER, STEPHEN G. DILLY, GEORGIA ERBEZ, CHRISTY OLIGER, and ANDREW SINCLAIR,<br><br>                Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jacob Wheeler ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against Sierra Oncology, Inc. ("Sierra Oncology" or the "Company") and the members of Sierra Oncology's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell Sierra Oncology to GlaxoSmithKline plc ("GSK") (the "Proposed Transaction").

2. On April 12, 2022, Sierra Oncology entered into an Agreement and Plan of Merger with GSK and its indirect, wholly owned subsidiary, Orikum Acquisition Inc. (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, GSK will acquire Sierra Oncology for $55.00 in cash for each share of Sierra Oncology common stock.

3. On May 16, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Sierra Oncology stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Lazard Frères & Co. LLC ("Lazard"); and (iii) potential conflicts of interest faced by Lazard and Company insiders.

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Sierra Oncology stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for Sierra Oncology stockholders to vote on the Proposed Transaction is currently scheduled for June 29, 2022. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Sierra Oncology's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Sierra Oncology's common stock trades on the Nasdaq Global Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Sierra Oncology common stock.

10. Defendant Sierra Oncology is a Delaware corporation, with its principal executive offices located at 1820 Gateway Drive, Suite 110, San Mateo, California 94404. Sierra Oncology's shares trade on the Nasdaq Global Market under the ticker symbol "SRRA."

11. Defendant Robert Pelzer has been Chairman of the Board and a director of the Company at all relevant times.

12. Defendant Gaurav Aggarwal has been a director of the Company at all relevant times.

13. Defendant Andrew Allen has been a director of the Company at all relevant times.

14. Defendant Mona Ashiya has been a director of the Company at all relevant times.

15. Defendant Craig Collard has been a director of the Company at all relevant times.

16. Defendant Jeffrey H. Cooper has been a director of the Company at all relevant times.

17. Defendant Stephen G. Dilly has been President, Chief Executive Officer and a director of the Company at all relevant times.

18. Defendant Georgia Erbez has been a director of the Company at all relevant times.

19. Defendant Christy Oliger has been a director of the Company at all relevant times.

20. Defendant Andrew Sinclair has been a director of the Company at all relevant times.

21. Defendants identified in paragraphs 11-20 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

22. Sierra Oncology is a late-stage biopharmaceutical company that engages in researching, developing, and commercializing therapies for the treatment of patients with hematology and oncology needs. The Company's lead drug candidate, momelotinib, is a selective and orally bioavailable Janus kinase ("JAK") 1, JAK2, and Activin A receptor type 1 ("ACVR1") inhibitor. Sierra Oncology also develops SRA515, a selective bromodomain-containing protein 4 inhibitor, and SRA737, an orally bioavailable small molecule inhibitor of Checkpoint kinase 1. In addition, the Company has license agreements with Carna Biosciences, Inc. to develop and commercialize SRA141, a small molecule kinase inhibitor targeting Cdc7, AstraZeneca AB, and CRT Pioneer Fund LP.

**The Proposed Transaction**

23. On April 13, 2022, Sierra Oncology announced that it had entered into the Proposed Transaction, stating, in relevant part:

> LONDON--GlaxoSmithKline plc (LSE/NYSE: GSK) and Sierra Oncology, Inc (Nasdaq: SRRA) today announced that the companies have entered into an agreement under which GSK will acquire Sierra Oncology, a California-based, late-stage biopharmaceutical company focused on targeted therapies for the treatment of rare forms of cancer, for $55 per share of common stock in cash representing an approximate total equity value of $1.9 billion (£1.5 billion).
>
> Myelofibrosis is a fatal cancer of the bone marrow impacting the normal production of blood cells. Anaemia represents a high unmet medical need in patients with myelofibrosis. At diagnosis, approximately 40% of patients are already anaemic, and it is estimated that nearly all patients will eventually develop anaemia.[1,2] Patients treated with the most commonly used JAK inhibitor will often require transfusions, and more than 30% will discontinue treatment due to anaemia.[3] Anaemia and transfusion dependence are strongly correlated with poor prognosis and decreased overall survival.[4]
>
> Momelotinib has a differentiated mode of action with inhibitory activity along key signalling pathways. This activity may lead to beneficial treatment effects on anaemia and reduce the need for transfusions while also treating symptoms. In January 2022, Sierra Oncology announced positive topline results from the MOMENTUM phase III trial. The study met all its primary and key secondary endpoints, demonstrating that momelotinib achieved a statistically significant and clinically meaningful benefit on symptoms, splenic response, and anaemia.
>
> **Luke Miels, Chief Commercial Officer, GSK** said: "Sierra Oncology complements our commercial and medical expertise in haematology. Momelotinib offers a differentiated treatment option that could address the significant unmet medical needs of myelofibrosis patients with anaemia, the major reason patients discontinue treatment. With this proposed acquisition, we have the opportunity to potentially bring meaningful new benefits to patients and further strengthen our portfolio of specialty medicines."
>
> **Stephen Dilly, MBBS, PhD, President and Chief Executive Officer, Sierra Oncology** said: "Uniting with GSK creates the best opportunity for Sierra Oncology to realise its mission of delivering targeted therapies that treat rare forms of cancer while also delivering compelling and certain value for our stockholders. Now we have a partner with a global infrastructure and oncology expertise that enables us to deliver momelotinib to patients as quickly as possible and on a global scale."

Momelotinib complements GSK's *Blenrep* (belantamab mafodotin), building on GSK's commercial and medical expertise in haematology. The proposed acquisition aligns with GSK's strategy of building a strong portfolio of new specialty medicines and vaccines. If the transaction is completed and momelotinib is approved by regulatory authorities, GSK expects momelotinib will contribute to GSK's growing specialty medicines business, with sales expected to begin in 2023, with significant growth potential and a positive benefit to the Group's adjusted operating margin in the medium term.

**Financial considerations**

Under the terms of the agreement, the acquisition will be effected through a one-step merger in which the shares of Sierra Oncology outstanding will be cancelled and converted into the right to receive $55 per share in cash. Subject to customary conditions, including the approval of the merger by at least a majority of the issued and outstanding shares of Sierra Oncology, and the expiration or earlier termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, the transaction is expected to close in the third quarter of 2022 or before.

The per share price represents a premium of approximately 39 per cent to Sierra Oncology's closing stock price on 12 April 2022 and a premium of approximately 63 per cent to Sierra's volume-weighted average price (VWAP) over the last 30 trading days. Sierra Oncology's Board of Directors has unanimously recommended that Sierra's stockholders vote in favour of the approval of the merger. Additionally, stockholders of Sierra Oncology holding approximately 28 per cent of Sierra's outstanding shares, have agreed to vote their shares in favour of approval of the merger.

GSK will account for the transaction as a business combination and expects it to be accretive to adjusted EPS in 2024, the expected first full year of momelotinib's sales. New GSK reaffirms its full-year 2022 guidance, the medium-term outlook for 2021-2026 of more than 5% sales and 10% adjusted operating profit CAGR* at CER**, and long-term sales ambition.

The value of the gross assets of Sierra Oncology to be acquired (as of 31 December 2021) is $109 million (£83 million at the rate of £1 = $1.312, being the 31 March 2022 spot rate). The net losses of the business were $95 million for the 12 months ended 31 December 2021 (£70 million, at the rate of £1 = $1.38, being the average rate for the period).

* CAGR: Compound Annual Growth Rate; **CER: Constant Exchange Rate

**Advisors**

PJT Partners is acting as financial advisor and Cleary Gottlieb Steen & Hamilton LLP is serving as legal counsel to GSK in connection with the transaction. Lazard

is acting as financial advisor and Wilson Sonsini Goodrich & Rosati is serving as legal counsel to Sierra Oncology.

**The Materially Incomplete and Misleading Proxy Statement**

24. On May 16, 2022, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that Sierra Oncology stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Lazard; and (iii) potential conflicts of interest faced by Lazard and Company insiders.

*Material Misrepresentations and/or Omissions Concerning Sierra Oncology's Financial Projections*

25. The Proxy Statement fails to disclose material information concerning the financial projections for the Company.

26. For example, with respect to the Company's financial projections, the Proxy Statement fails to disclose all line items underlying: (i) Adjusted EBITDA; and (ii) Unlevered Free cash flow.

*Material Misrepresentations and/or Omissions Concerning Lazard's Financial Analyses*

27. The Proxy Statement fails to disclose material information concerning Lazard's financial analyses.

28. With respect to Lazard's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose a quantification of: (i) Sierra Oncology's terminal year unlevered free cash flow; (ii) the Company's terminal values; and (iii) the inputs and assumptions underlying the discount rates ranging from 10.0% to 12.0%.

29. With respect to Lazard's *Selected Public Companies Analysis* and *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies and transactions analyzed by Lazard, respectively.

30. With respect to Lazard's *Premia Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions analyzed; and (ii) the individual premiums observed for each transaction.

31. With respect to Lazard's *Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

*Material Misrepresentations and/or Omissions Concerning Lazard's and Company Insiders' Potential Conflicts of Interest*

32. The Proxy Statement fails to disclose material information concerning Lazard's potential conflicts of interest.

33. For example, the Proxy Statement fails to disclose the details of any services Lazard has provided to Sierra Oncology in the two years prior to the delivery of its fairness opinion, and any compensation Lazard received for such services provided.

34. The Proxy Statement also fails to disclose material information concerning potential conflicts of interest faced by Company insiders.

35. Specifically, the Proxy Statement fails to disclose whether any of GSK's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

36. In sum, the omission of the above-referenced information renders statements in the "Certain Unaudited Prospective Financial Information," "Opinion of Lazard Frères & Co. LLC,"

and "Interests of Sierra Oncology's Directors and Executive Officers in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Sierra Oncology will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Sierra Oncology

37. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

38. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Sierra Oncology is liable as the issuer of these statements.

39. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

40. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

41. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate

disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

42. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

43. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

44. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

45. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of Sierra Oncology within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Sierra Oncology and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

49. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Sierra Oncology, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 8, 2022                                    **ACOCELLI LAW, PLLC**

By  */s/ Richard A. Acocelli*
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*